**54**

UNITED STATES, Appellee,

v.

Luis E. FIGUEROA, Corporal U.S.
Marine Corps, Appellant.

No. 66,996.
NMCM 89 3902.

U.S. Court of Military Appeals.

Argued Feb. 11, 1992.
Decided Aug. 12, 1992.

For Appellant: *Major Richard T. McNeil*, USMC (argued); *Captain M.K. Schaller*, USMC.

For Appellee: *Captain A. Diaz*, USMC (argued); *Colonel T.G. Hess*, USMC (on brief); *Commander Thomas W. Osborne*, JAGC, USN, and *Lieutenant Kirk A. Ludwig*, JAGC, USNR.

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of conspiracy to distribute cocaine, distribution of cocaine (3 specifications), possession of cocaine with intent to distribute, and three unlawful firearms transactions, in violation of Articles 81, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 912a, and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement for 10 years, and total forfeitures. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated May 15, 1991. We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS THE COCAINE SEIZED FROM APPELLANT'S QUARTERS.

On February 17, 1989, a Taurus .357 revolver was discovered by agents of the Naval Investigative Service (NIS) at the site of a suspected suicide aboard Marine Corps Base, Marine Corps Combat Development Command, Quantico, Virginia. On February 21, NIS Special Agent (SA) O'Connor obtained a Federal Firearms Record reflecting an over-the-counter sale of five handguns, including the one found at the suicide site, to Lance Corporal (LCPL) Walker. Another of the five handguns was found in LCPL Walker's quarters. In a sworn statement, LCPL Walker admitted purchasing the weapons and stated that he delivered four of them to appellant and kept the one found in his quarters. LCPL Walker told SA O'Connor that appellant "had agreed to erase the serial numbers from the weapons."

SA O'Connor discussed the case with a military lawyer in the base legal office, who advised that there was probable cause for a search of appellant's quarters and personal automobile. SA O'Connor requested authority for the search from the base commander, supporting his request with an affidavit reciting the above information and LCPL Walker's sworn statement. SA O'Connor opined in his search request that the evidence indicated appellant's intent to circumvent the base order regarding registration of personal weapons.

Before taking his affidavit and request for search authorization to the base commander, SA O'Connor learned that appellant's car was not at his quarters, that a large amount of mail had accumulated in appellant's mail box, and that appellant apparently had not been in the quarters for several days. SA O'Connor did not give the base commander this information because he did not think it affected the probable-cause determination.

The base commander approved SA O'Connor's search request. NIS agents searched the quarters and did not find any guns, but found a small amount of cocaine instead. Appellant now contends, as he did before the Court of Military Review, that the search of his quarters was unlawful, so the cocaine involved in specification 5 of Charge II should have been suppressed as evidence. We disagree and affirm the decision of the Court of Military Review.

In resolving the granted issue, we must answer two questions: (1) do the facts related by SA O'Connor to the base commander constitute probable cause to search appellant's quarters? and (2) did SA O'Connor's failure to mention that appellant and his car apparently had been absent from the quarters for several days invalidate the search authorization?

■■■ Mil.R.Evid. 315(f)(2), Manual for Courts-Martial, United States, 1984, provides, "Probable cause to search exists

when there is a reasonable belief that the person, property, or evidence sought is located in the place ... to be searched." In determining whether the base commander had probable cause to authorize the search of appellant's quarters, the question is "whether, given all the circumstances set forth in the affidavit before him, ... a fair probability" exists that the weapons[1] would be found in appellant's quarters. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Our duty as a reviewing court is to ensure that the commander "had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332, *citing Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *see United States v. Walters*, 22 USCMA 516, 518, 48 CMR 1, 3 (1973).[2]

■ Appellant argues that there was no probable cause for the search of his quarters because the information provided by SA O'Connor did not establish "a fair probability" that the handguns were located in the quarters. He points out that LCPL Walker did not report seeing the handguns in the quarters, and he did not report that appellant intended to store them in the quarters. Finally, appellant argues that the information was stale because, at the time of the search authorization, 1 week had passed since the handguns were last seen in his possession.

We hold that the commander had a substantial basis for concluding that probable cause existed to search appellant's quarters. The most logical place for appellant to store the weapons was either his quarters or his automobile. Since appellant was not likely to repeatedly risk detection by carrying contraband handguns in his

automobile while traveling onto and exiting from the base, the most logical place to look for them was in his quarters. *See United States v. Barnard*, 23 USCMA 298, 302, 49 CMR 547, 551 (1975) (living quarters and locker at work station were "two logical and reasonable places" to conceal stolen jewelry); *United States v. Walters*, *supra* ("logical to reason" that accused hid stolen property in his wall locker); *United States v. Sparks*, 21 USCMA 134, 136, 44 CMR 188, 190 (1971) ("most logical place" to search for stolen camera and coat was accused's quarters). Although the weapons had not been seen for a week, there was no indication that he had removed them from the base or otherwise disposed of them.

■ We turn finally to the question whether omission of information indicating appellant's extended absence from his quarters invalidated the search authorization. We hold that it did not.

■ Although *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and Mil.R.Evid. 311(g)(2) deal with misrepresentations and do not specifically address omissions, we believe that omissions of information should be analyzed in the same manner as misrepresentations. *See United States v. Ippolito*, 774 F.2d 1482, 1486–87 and n.1 (9th Cir.1985); *United States v. Martin*, 615 F.2d 318, 328–29 (5th Cir.1980); *United States v. House*, 604 F.2d 1135, 1141 n. 9 (8th Cir.1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). Omissions do not "undermine probable cause" unless they are intentional or made "with reckless disregard for the" accuracy of the information. Merely "negligent omissions" do not

---

**1.** Drugs found in a search only for weapons may be seized without obtaining another authorization. *See United States v. Smeal*, 23 USCMA 347, 355, 49 CMR 751, 759 (1975).

**2.** The "substantial basis" test for reviewing a commander's probable cause determination has been used by this Court since *United States v. Penman*, 16 USCMA 67, 73, 36 CMR 223, 229 (1966). Based on the Supreme Court's language in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct.

2317, 2332, 76 L.Ed.2d 527 (1983), several Federal appeals courts also have applied the "substantial basis" test, *e.g.*, *United States v. Edmonson*, 962 F.2d 1535, 1540 (10th Cir.1992); *United States v. Brown*, 951 F.2d 999, 1002 (9th Cir. 1991); *United States v. Day*, 949 F.2d 973, 977 (8th Cir.1991). At least one circuit has granted even greater judicial deference by adopting a "clear error" standard, *e.g.*, *United States v. Spears*, 965 F.2d 262 (7th Cir.1992).

"undermine" probable cause. *United States v. Martin*, 615 F.2d at 329.

We are satisfied, as was the court below, that SA O'Connor did not deliberately mislead the commanding officer. Furthermore, even if he had intentionally or recklessly omitted the additional information, it "would not have extinguished probable cause." *United States v. Tham*, 948 F.2d 1107, 1111 (9th Cir.1991) (footnote omitted).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and CRAWFORD concur.

WISS, Judge (concurring in the result):

The majority opinion states, "Our duty as a reviewing court is to ensure that the commander 'had a "substantial basis for ... conclud[ing]" that probable cause existed.'" 35 MJ at 56. The case cited as authority for this standard of review is *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983), which does hold that, where a search is pursuant to a magistrate's warrant, an appellate court properly ought not determine probable cause *de novo* but, rather, ought to limit itself to determining whether the magistrate had a "substantial basis" for the probable-cause determination.

Where, however, the search is without a warrant, Federal courts have not been so distant in reviewing the existence of probable cause to support the search. Instead, in non-warrant cases, an appellate court properly can determine for itself, *de novo*, whether there was probable cause. *See, e.g., United States v. McKinney*, 919 F.2d 405 (7th Cir.1990).* *See also United States v. Straughter*, 950 F.2d 1223 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1505, 117 L.Ed.2d 643 (1992); *United States v. Uribe–Velasco*, 930 F.2d 1029 (2d Cir.1991). I believe the same rationale for differentiating between the two standards

of review that is fully set out in *McKinney* applies, as well, in the military.

The difficulty, though, is that a search pursuant to a military commander's authorization is neither a warrant search nor a warrantless search. I believe that, after carefully considering the rationale behind the two different appellate standards of review, the standard for review of a commander's search authorization ought to parallel the decision as to whether the commander's authorization is entitled to the good-faith exception. *See United States v. Lopez*, 35 MJ 35, 49 (CMA 1992) (Wiss, J., concurring in the result).

From my viewpoint, then, if the situation is such that the commander could be the subject of a good-faith exception because the commander fulfilled the Supreme Court's expectations of "neutral judicial officers ... [with] no stake in the outcome of particular criminal prosecutions," *see United States v. Leon*, 468 U.S. 897, 917, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984), then I will review the commander's probable-cause determination on the substantial-basis standard. That is the standard of review to which such judicial officers' determinations are entitled. *See Illinois v. Gates, supra.*

On the other hand, if the realistic view of the commander reflects someone who—though qualified to have issued the authorization under *United States v. Stuckey*, 10 MJ 347 (CMA 1981)—does not conform to the *Leon* majority's vision of an official whose authorizations are entitled to be executed in reasonable good faith, then I will review that commander's probable-cause finding less deferentially in the nature of a *de novo* review.

Under the circumstances of this case, I am satisfied that execution of this commander's authorization would have been entitled to the good-faith exception, so I agree with the majority's limited standard of review—and, as well, with the majority's application of that standard here.

---

* In *United States v. Spears*, 965 F.2d 262, 270 (7th Cir.1992), another panel of the 7th Circuit questioned the standard used in *McKinney*. Reconsideration *en banc* was denied by a divided vote of the Circuit Judges. *Id.* at 282.